FORD SMITH, APPELLEE, v. EDWARD A. ROEHRIG ET AL., APPELLANTS.

FILED NOVEMBER 14, 1911. No. 16,896.

1. **Intoxicating Liquors:** CONSTITUTIONALITY OF ACT. Section 15 of the act of 1881 (Comp. St. 1881, ch. 50), commonly known as the "Slocumb law," substantially re-enacts section 340 of the criminal code of 1866. In many cases since its first enactment this court has assumed its validity, and, being satisfied that it is constitutional upon re-examination, it is so held without further discussion.

2. **Appeal:** INSTRUCTIONS. This court will not reverse a judgment of the trial court for an erroneous instruction, when it appears from the whole record that the party complaining has not been prejudiced thereby. *Aultman & Co. v. Reams*, 9 Neb. 487, *Omaha & R. V. R. Co. v. Hall*, 33 Neb. 229, *Standiford v. Green & Co.*, 54 Neb. 10, and *Shoemaker v. Commercial Union Assurance Co.*, 75 Neb. 587, distinguished.

3. ———: EXCLUSION OF EVIDENCE. When, in an action for damages caused by an assault, evidence is offered as to statements made by one of the parties to the assault, it is for the trial court to determine whether such statements were a part of the *res gestæ;* and if the circumstances indicate that the statements were self-serving, and made with deliberation, it will not be held to be an abuse of discretion to exclude such statements.

4. **Principal and Surety:** TRIAL: PROVINCE OF JURY. It is not the duty of the jury to find which of the defendants is principal and which are sureties, under section 511 of the code. It is not error to refuse to submit that matter to the jury to guard against prejudice when the surety is a foreign corporation.

5. **Intoxicating Liquors:** ACTION FOR DAMAGES: EVIDENCE. Evidence examined, and found sufficient to support the verdict, and that the damages are not so excessive as to require a reversal.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*C. W. Britt* and *A. G. Ellick,* for appellants.

*John M. Macfarland* and *Albert W. Jefferis, contra.*

SEDGWICK, J.

The defendant Roehrig was a licensed saloon-keeper in the city of Omaha, and the defendant the Title Guaranty & Surety Company of Scranton, Pennsylvania, was the surety on his bond as such saloon-keeper. The plaintiff began this action to recover damages for personal injuries inflicted upon him in or about the saloon of defendant, and caused, as he alleges, by the intoxication of George Weatherford and Bud Weatherford, who assaulted and injured him, alleging that the defendant sold the liquor that caused the intoxication of the said

George Weatherford and Bud Weatherford. The plaintiff recovered a judgment for $2,000 damages, and the defendants have appealed.

1. The principal part of the brief of the defendants is devoted to an attack upon the constitutionality of the statute known as the "Slocumb law." Comp. St. 1909, ch. 50. Many reasons are given for considering this law unconstitutional. They are quite fully presented, and urged with earnestness and ability. It is maintained that the whole act is unconstitutional, but the principal attack is upon section 15, which is the basis of this action. The so-called Slocumb law was enacted in 1881, and section 15 substantially re-enacts section 576 of the criminal code as it then existed (Gen. St. 1873), which was a part of the criminal code of 1866 (sec. 340), so that this particular section has been upon the statute books for 45 years. During this time this court has considered a very large number of cases, both civil and criminal, under the various provisions of this statute, and the Slocumb law very soon after its enactment was challenged as unconstitutional. In *Pleuler v. State*, 11 Neb. 547, the question of the constitutionality of the act in general was presented by very able counsel and thoroughly considered in the opinion by Mr. Justice LAKE, and the act was held to be constitutional. This was a criminal prosecution, and did not specifically involve the provision of section 15 of the act. Again, in *Hunzinger v. State*, 39 Neb. 653, the proviso of section 1 of the act was considered, and held to be constitutional, and the court declared itself to be entirely satisfied "with the reasoning and the conclusion" in *Pleuler v. State, supra.* In cases almost innumerable this court has considered various parts of this act, and has assumed that the act as a whole is within the power of the legislature, and valid. For these reasons, while we have examined the brief in this case upon these constitutional questions with interest, we do not feel called upon to enter into an extensive discussion of the questions so presented.

2. The petition alleges that "George Weatherford and Bud Weatherford assaulted and beat this plaintiff with their fists, feet, and with hard instruments, and said George Weatherford, whilst intoxicated from the liquors sold him by the said Edward A. Roehrig, and from no other cause, and without any fault on the part of this plaintiff, struck the plaintiff in the left eye, and injured same, so that this plaintiff has lost the use of said eye, and suffered great pain in said eye until about the 30th day of September, 1908, when said left eye of this plaintiff, which before this assault was in perfect condition, and owing to the injury received, was removed from his head by a surgeon; that it became necessary to remove this eye by reason of the injury; and that owing to this injury the other eye of this plaintiff is now defective." The evidence tended to show that the plaintiff and both of the Weatherfords were drinking at the bar of the defendant, and became involved in a quarrel, and that the plaintiff was assaulted and severely beaten by the Weatherfords, and that the plaintiff's eye was injured substantially as he alleged in the petition. When the evidence was complete, the plaintiff asked leave to strike from the petition the following words: "Said George Weatherford, whilst intoxicated from the liquors sold him by the said Edward A. Roehrig, and from no other cause, and without any fault on the part of this plaintiff." The court refused to allow these words to be stricken from the petition, on the ground "that said amendment presents a theory of this case other and different from that presented in the pleadings, and upon which the case was tried, and creates a new and different issue in this case than was presented by the original petition." Under the directions of the court, the jury made special findings of fact, and found specially that George Weatherford was under the influence of liquor at the time the plaintiff was injured, and that one of the Weatherfords struck the blow that caused the injury to the plaintiff's eye which resulted in its removal, but that they were unable to determine which

one of the Weatherfords struck the blow. The general verdict of the jury was in favor of the plaintiff, assessing his damage at the sum of $2,000. The court instructed the jury that, unless they found that George Weatherford struck the blow that caused the injury to plaintiff's eye, they could not allow the plaintiff any damages caused by that particular injury. It is now insisted that the damages allowed by the jury in their general verdict are excessive, because under the instruction of the court the loss of the plaintiff's eye is not to be considered in estimating the damages, and the other injuries suffered by the plaintiff were not serious, and not sufficient to justify the damages allowed. It seems clear that the court should have allowed the plaintiff's request to strike out the allegation specifying which one of the Weatherfords struck the blow that caused the injury to the plaintiff's eye. That allegation, however, was immaterial, and might properly be treated as surplusage. The two Weatherfords joined in the assault upon the plaintiff, and each of them was responsible for the actions of the other in committing a joint assault. The difficulty in the case arises from the instruction of the court to disregard the injury to the eye, unless the jury could determine that George Weatherford caused that injury. The instruction was incomplete and inaccurate, if not erroneous, and should not have been given. It seems probable that the jury disregarded the instruction, since the evidence shows that the loss of his eye was the principal injury suffered by the plaintiff, and the other injuries suffered were so inconsiderable as not to justify the general verdict of the jury.

The defendants suggest in their brief that "it is a well-settled rule of law in this state that it is the duty of the jury to follow the instructions of the court, whether said instructions are right or wrong, and if they fail to do so their verdict is contrary to law, and should be set aside, and a new trial ordered." They assume that this rule is absolute and applies in the broad terms in which it is

stated to all cases under all circumstances. Mr. Thompson in his work on Trials (vol. 2, sec. 2402) says: "Of course, it can never be said that the jury were misled by the giving of erroneous instructions, where they have reached the correct result by their verdict. Accordingly, it is the practice of most of the courts, before passing upon exceptions to instructions, to look into the evidence and see if the verdict was right, and, if it is found to be so, the court will look no further." In *Tilman v. Stringer,* 26 Ga. 171, it is held that, "although the court charge the law erroneously, still, if the verdict of the jury be right, no new trial will be granted." See, also, *Pratte & Cobanne v. Judge of Court of Common Pleas,* 12 Mo. 194; *Hannum v. Belchertown,* 19 Pick. (Mass.) 311; *Potter v. Hopkins,* 25 Wend. (N. Y.) 417. These and other early cases hold that when the court can see from the whole record that the party complaining has not been prejudiced by the erroneous instruction, and justice has been done in the case, the error will be disregarded, and the judgment affirmed. Later cases in the several states have generally followed this rule. We think that this rule is sound, and that the decisions of this court, when carefully examined, are not necessarily inconsistent with it.

In *Aultman & Co. v. Reams,* 9 Neb. 487, in an opinion by Mr. Justice COBB, this court said: "Whether right or wrong, it was the duty of the jury to respect and obey the instructions of the court, and for their failure to do so the verdict should have been set aside; and it was error for the district court to refuse to do so." He cites as authority for this statement the case of *Jewett & Root v. Smart & Gillett,* 11 Ia. 505. In that case the trial court granted a new trial, "upon the ground that the verdict was contrary to the evidence and the instructions of the court." The appeal was taken from this order of the trial court granting a new trial. The supreme court refused to reverse the order, remarking that, "whether right or wrong, it was the duty of the jury to regard them

as the law." In this state no appeal is allowed from an order granting a new trial until after the new trial is had and the case finally disposed of in the trial court. The Iowa decision might very well be cited as authority in a case where the instruction of the trial court was right, and the jury disregarded both the instruction and the evidence, but it is not authority for the proposition that the judgment of the trial court must be reversed in all cases where the jury has disregarded an erroneous statement of the trial court upon an immaterial point. *Aultman & Co. v. Reams, supra,* was an action on a promissory note. On the trial the plaintiff called the defendant as witness to prove his signature to the note, and the defendant denied the signature, whereupon the plaintiff asked the court to dismiss the action without prejudice, which the court refused to do. This was the principal error complained of, and for this reason the judgment of the district court was properly reversed. The cause was submited to the jury, and the verdict was rendered for $35 damages. The court instructed the jury "that upon the evidence in this case, in any event, you can only find nominal damages, as no actual damages are proved." The opinion shows that there was no evidence supporting this finding of the jury. The instruction of the court was correct. When the evidence entirely fails to sustain a cause of action or a counterclaim, it is the duty of the court to so instruct the jury and to enforce that instruction. This the trial court had failed to do, and there is no doubt of the correctness of the conclusion of this court upon this point. If the statement of the court in the opinion is to be construed that in all cases and under all circumstances the judgment must be reversed if the jury disregards an immaterial or erroneous instruction of the trial court, it was dictum merely, and should not be regarded.

In *Omaha & R. V. R. Co. v. Hall,* 33 Neb. 229, the first paragraph of the syllabus is as follows: "It is the duty of a jury to find its verdict in accordance with the law

as given in the instructions of the court. When they
clearly violate this duty, the court should set aside their
verdict. The refusal of the court to do so upon proper
application is reversible error." This was an action for
damages for personal injury. It appeared that after the
injury the surgeon of the defendant company had, at the
company's request, treated the plaintiff's injury. It was
insisted by the plaintiff that this surgeon did not use
ordinary care, skill and diligence in treating him. The
jury rendered a general verdict for the plaintiff, with a
special finding that the surgeon did use ordinary care,
skill and diligence in treating the plaintiff. The trial
court, it appears, gave general instructions in regard to
the assumption of risk and the negligence of fellow
servants. These instructions, as quoted in the opinion,
appear to be substantially correct, but the court said that
it was not necessary to decide whether they correctly
stated the law, because under those instructions there
was no evidence that could support the verdict on the
ground of negligence of the defendant company, unless
it was because the surgeon had improperly treated the
injuries of the plaintiff, and as the jury had found in a
special verdict that the surgeon did not improperly treat
the plaintiff the verdict was wholly unsupported by the
evidence. The petition alleged that in unloading coal
from one of the defendant's cars the fellow servant
"carelessly and negligently threw a large and heavy lump
of coal upon plaintiff's right hand, crushing the same."
The evidence followed the petition, so that there was no
doubt that the negligence of a fellow servant was the
primary cause of the injury. The substance of the
court's instruction to the jury was to the effect that
under such circumstances the plaintiff could not recover.
There was therefore total failure of evidence to support
the plaintiff's case, and the judgment was rightly re-
versed. It is manifest that, although the rule of law in
regard to the duty of the jury to follow the instructions
of the court is somewhat broadly stated, yet it was

intended to apply only under the peculiar circumstances of that case. The earlier case of *Meyer v. Midland P. R. Co.*, 2 Neb. 319, is cited as authority for this statement of the law. In the *Meyer* case the law is stated in the syllabus as follows: "If the jury disregard the testimony and the instructions of the court, and return a verdict not supported by the former, nor in obediance to the latter, their finding should be promptly set aside, and a new trial ordered." And the opinion shows that the instruction given by the court was a correct statement of the law, and that it appeared from the evidence that the jury had disregarded both the instruction of the court and the evidence in the case.

In *Standiford v. Green & Co.*, 54 Neb. 10, the question was as to the validity of a chattel mortgage. The court instructed the jury that "if at the time the mortgage was given the plaintiffs and Westfall secretly agreed that possession was to be taken of the goods, that plaintiffs should sell sufficient to satisfy their own claim, and thereafter continue to sell and apply the proceeds to the payment of other debts of Westfall * * * then the mortgage was void, and the jury should find for the defendant." The undisputed evidence showed "that the mortgage was given in pursuance of such an agreement as was outlined in the instruction." The instruction submitted the only question involved in the case. There was nothing for the jury to determine except the question of fact covered by this instruction. The court, by IRVINE, C., said: "We need not inquire whether the instruction was correct in law. It was given, and it was the duty of the jury to obey it. The verdict was rendered in manifest disregard of the instruction, and is for that reason contrary to law." The opinion quotes from *Aultman & Co. v. Reams* and *Omaha & R. V. R. Co. v. Hall, supra*. The decision is manifestly right, and it is not necessary to inquire whether the language used is so general that it might be applied improperly under other circumstances.

*Shoemaker v. Commercial Union Assurance Co.*, 75 Neb.

587, was an action upon an alleged agreement to insure; no policy having been issued. The trial court instructed the jury that the burden was upon the plaintiff to establish "that the plaintiff agreed to pay, and did pay, the premium to the defendant, the Commercial Union Assurance Company." The court said that "the case was brought and tried on the theory that, the defendant having offered to insure the property for a certain premium, and the plaintiff having accepted such offer and paid the premium, the defendant is bound by a contract of insurance," and that there was no competent evidence tending to establish the fact of payment of the premium. The action being brought upon an offer to insure, and an acceptance thereof and payment of premium, it was necessary to prove that such payment was made. The evidence failed upon that point, and the judgment was properly reversed. We do not find it necessary to overrule, or even criticise, the decisions of this court in the cases cited. We are satisfied that the language used in these opinions should not be extended to cases like the one at bar.

In this case the instruction of the court relied upon is inaccurate and incomplete, if not erroneous. If, while the two men were jointly assaulting the plaintiff, one of them struck the blow which caused the injury, both would be equally responsible, and in that sense it may be said the finding of the jury that one of these two men struck the blow is equivalent to finding that George Weatherford struck the blow, as originally alleged in the petition. If this view is taken, the instruction is inaccurate and incomplete. If the instruction is to be construed to mean that plaintiff could not recover unless George Weatherford personally and individually struck the blow, it is erroneous, and, as before stated, the jury has manifestly disregarded it. Unless it appears from a consideration of the whole record that this action of the jury in disregarding this statement of the court was without prejudice to the defendant, or if it appears that the verdict might probably have been different

if the erroneous instruction had been omitted, a new trial would be necessary, and the judgment should be reversed. We find from the whole record that this instruction could not have influenced the verdict prejudicially to the rights of the defendants.

3. After the assault complained of, and George Weatherford had gone out of the saloon upon the sidewalk, he met an officer, who appears to have asked him some questions. Upon the trial the defendant offered to prove that at that time George Weatherford told the officer that the plaintiff "had tried to cut him with a razor." The court refused to allow this testimony, and it is now insisted that this was part of the *res gestæ,* and should have been allowed. We do not think that the court improperly exercised its discretion in this matter. The conversation with the officer was no doubt very soon after the assault, and possibly while the witness Weatherford was somewhat under the excitement caused by the difficulty in the saloon, but the inclination to justify one's self before an officer of the law might lead to self-serving statements, and it is not so clear that these statements of the witness were competent as to require a reversal for abuse of discretion on the part of the trial court.

4. The defendants requested the following instruction: "You are instructed that, should you return a verdict in this case against the defendants, the liability of the Title Guaranty & Surety Company herein would be that of a surety merely, and that, before plaintiff would be permitted to call upon said surety for the payment of any part of a judgment rendered upon said verdict, the law of this state requires him to first exhaust all of the property of the defendant Roehrig, both real and personal, within the jurisdiction of this court." So far as the rights of the plaintiff are concerned, the statute appears to make the principal defendant and his surety jointly and severally liable, and if, as between the principal defendant and his surety, the surety was entitled to the benefit of the provision of section 511 of the code, the jury has nothing

to do with that matter. It is the duty of the clerk, under the directions of the court, "in recording the judgment thereon, to certify which of the defendants is principal debtor, and which are sureties or bail." No error of the clerk in that regard is suggested in the motion for new trial, and this court cannot now consider the point. It is, however, urged in the brief that the surety company was entitled to this instruction, "because of the well-known prejudice that exists in the minds of the ordinary juror against corporations, and particularly against foreign corporations." We cannot, however, presume that jurors will so far disregard their oaths as to be influenced by such conditions. It is the duty of the trial court, so far as practicable, to see that the jury is not improperly prejudiced or influenced in the trial of the case; and the jury should render the verdict without prejudice or favor, and without regard to the character or condition of the respective parties. This court must assume that the trial court and the jury have done their duty, unless it affirmatively appears otherwise. We cannot say from this record that the jury were prejudiced against either of the defendants, or that the giving of the requested instruction is a proper method of guarding against such prejudice.

5. It is insisted in the briefs that the damages allowed by the jury are excessive. It is said that it is not established by the evidence that George Weatherford struck the plaintiff at all; but the plaintiff, and at least one of the other witnesses, testified that he did, and that question was for the jury. And, further, as we have already pointed out, the evidence shows clearly that these two parties together, with perhaps another, attacked and assaulted the plaintiff, and that before and at the time of the attack these parties were all drinking at the bar of the principal defendant. Under this evidence, it was a question of fact for the jury as to whether the plaintiff sustained damages "in consequence of such traffic * * * in intoxicating drinks," within the meaning of section 15 of the Slocumb

law, as explained to them in the instructions of the court. The argument upon the theory that no damages should be allowed for the loss of the plaintiff's eye is disposed of by the discussion of that question.

The judgment of the district court is

AFFIRMED.